IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA

C. A. No.___________________

KRISTINA KAREN TALLEY, and

KURT R. COSELLO

PLAINTIFFS,

v.

STATE OF PENNSYLVANIA,

LAW ASSOCIATES, LLC.,

JOSEPH P. RILEY AND SONS MOVING COMPANY INC.,

DEFENDANTS.

REC'D OCT 23 2026

DEMAND FOR JURY TRIAL

COMPLAINT FOR VIOLATION OF CONSTITUTIONAL AND STATUTORY RIGHTS PURSUANT TO 42 U.S.C. § 1983; EX PARTE YOUNG DECLARATORY AND INJUNCTIVE RELIEF; AND SUPREMACY CLAUSE

Kristina Karen Talley, *pro se*

2353 E Cumberland Street

Philadelphia, PA 19125

Kurt R. Costello, *pro se*

2353 E Cumberland Street

Philadelphia, PA 19125

Submitted: October 23, 2026

TABLE OF CONTENTS

TABLE OF CONTENTS ..... ii
TABLE OF AUTHORITIES ..... iv
DEMAND FOR JURY TRIAL; COMPLAINT FOR VIOLATION OF CONSTITUTIONAL AND STATUTORY RIGHTS PURSUANT TO 42 U.S.C. § 1983; EX PARTE YOUNG DECLARATORY AND INJUNCTIVE RELIEF; AND SUPREMACY CLAUSE ..... 8
JURISDICTION AND VENUE ..... 8
PARTIES ..... 9
FACTUAL ALLEGATIONS ..... 11
I. BACKGROUND: THE SIX-YEAR PATTERN AND THE 63-RELATED-CASE DATA SET ..... 11
II. THE PROPERTY, THE LEAD VIOLATIONS, AND THE FHC STATUTORY BAR ..... 13
III. THE TRIAL OF JUNE 1–2, 2026 AND THE DENIAL OF DUE PROCESS ..... 16
IV. THE BANKRUPTCY FILINGS AND THE AUTOMATIC STAY ..... 18
V. THE EX PARTE COMMUNICATION AND THE ESCROW RELEASE ..... 19
VI. THE CODE ENFORCEMENT OFFICER AND THE RENTAL LICENSE ..... 20
VII. THE PENDING APPEAL AND THE SUPERIOR COURT'S RETAINED JURISDICTION ..... 23
VIII. THE PENNSYLVANIA SUPERIOR COURT SEPTEMBER 22, 2026 ORDER: DEFECTIVE SERVICE AND FEDERAL COURT USE ..... 24
IX. THE EVIDENCE OBTAINED THROUGH UNAUTHORIZED ENTRY ..... 25
X. THE UNLAWFUL EVICTION OF OCTOBER 20, 2026 ..... 26
XI. THE ARREST AND DETENTION ..... 27
XII. SEIZURE OF PROPERTY AND DESTRUCTION OF EVIDENCE ..... 28
XIII. THE HIERARCHY OF THE LAW ..... 30
XIV. THE JUDICIAL CONDUCT AND THE FAILURE OF DISCIPLINARY PROCESSES ..... 32
XV. THE SCOTUS PETITIONS AND THE BROADER CONTROVERSY ..... 34
CAUSES OF ACTION ..... 35
COUNT I DUE PROCESS VIOLATION — EVICTION WITHOUT VALID JUDGMENT, PROPER SERVICE, OR LAWFUL WRIT (U.S. Const. amend. XIV, § 1; Pa.R.C.P. 400; Phila. Code § 9-1604; 42 U.S.C. § 1983) ..... 35
COUNT II FOURTH AMENDMENT — UNREASONABLE SEIZURE OF PROPERTY (U.S. Const. amend. IV; United States v. Jones, 565 U.S. 400 (2012); 42 U.S.C. § 1983) ..... 36
COUNT III FOURTH AMENDMENT — UNREASONABLE SEIZURE OF PERSON (ARREST) (U.S. Const. amend. IV; U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983) ..... 37
COUNT IV DUE PROCESS — DELIBERATE INDIFFERENCE TO MEDICAL EMERGENCY IN CUSTODY (U.S. Const. amend. XIV, § 1; Farmer v. Brennan, 511 U.S. 825 (1994); County of Sacramento v. Lewis, 523 U.S. 833 (1998); 42 U.S.C. § 1983) ..... 38
COUNT V ADA TITLE II — DENIAL OF REASONABLE ACCOMMODATION (42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7); 42 U.S.C. § 1983) ..... 39

COUNT VI DUE PROCESS — FORGERY OF RELEASE FORM AND FILING OF FALSE REPORT (U.S. Const. amend. XIV, § 1; 18 Pa.C.S. § 4101; 18 Pa.C.S. § 4906; 42 U.S.C. § 1983) ........ 40
COUNT VII WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(a), (k)(1), (k)(2); 42 U.S.C. § 1983) ........ 40
COUNT VIII CONSPIRACY TO DEPRIVE OF CONSTITUTIONAL RIGHTS (42 U.S.C. § 1983; Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)) . 42
COUNT IX SUPREMACY CLAUSE — STATE ACTION IN CONFLICT WITH FEDERAL LAW; EX PARTE YOUNG (U.S. Const. art. VI, cl. 2; 11 U.S.C. § 362(a); Ex parte Young, 209 U.S. 123 (1908))... 44
COUNT X DAMAGES FOR SEIZURE OF PROPERTY AND DESTRUCTION OF EVIDENCE (U.S. Const. amend. IV; 18 U.S.C. § 1512(c); 18 U.S.C. § 1519; 18 Pa.C.S. § 3921; 18 Pa.C.S. § 3923; 42 U.S.C. § 1983) ........ 45
COUNT XI PRIVATE PARTY JOINT PARTICIPATION — LUGAR v. EDMONDSON OIL CO. (42 U.S.C. § 1983; Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)) ........ 46
COUNT XII BRIBERY AND IMPROPER INFLUENCE OVER PUBLIC OFFICIALS (18 Pa.C.S. § 4701; 42 U.S.C. § 1983) ........ 47
COUNT XIII DUE PROCESS — DEFECTIVE SERVICE AND USE OF UNSIGNED ORDER IN FEDERAL COURT (U.S. Const. amend. XIV, § 1; Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950); 42 U.S.C. § 1983) ........ 49

SUPPORTING DOCUMENTS ........ 50
PRAYER FOR RELIEF ........ 53
DEMAND FOR JURY TRIAL ........ 55
DESIGNATION OF TRIAL ........ 55
CERTIFICATE OF WORD COUNT ........ 56
PROOF OF SERVICE ........ 57
APPENDIX ........ 60

# TABLE OF AUTHORITIES

Cases, Rules, Statutes, Laws, and Miscellaneous

§ 1983 .......... 42, 44, 46, 47
§ 362(b)(22) .......... 31
§ 362(k) .......... 42
11 U.S.C. § 105(a) .......... 30
11 U.S.C. § 362 .......... 19
11 U.S.C. § 362(a) .......... passim
11 U.S.C. § 362(k) .......... 9
11 U.S.C. § 362(k)(1) .......... 30, 41, 42, 54
11 U.S.C. § 362(k)(2) .......... 42
18 Pa.C.S. § 3921 .......... 29, 45, 46
18 Pa.C.S. § 3923 .......... 29, 45, 46
18 Pa.C.S. § 4101 .......... 40
18 Pa.C.S. § 4101(c) .......... 28, 40
18 Pa.C.S. § 4701 .......... 22, 44, 47, 48
18 Pa.C.S. § 4904 .......... 40
18 Pa.C.S. § 4906 .......... 28, 40
18 U.S.C. § 1512(c) .......... 29, 45, 46
18 U.S.C. § 1519 .......... 30, 45, 46
204 Pa. Code § 213.81 .......... 30
28 U.S.C. § 1367 .......... 8
28 U.S.C. § 1391(b)(2) .......... 8
28 U.S.C. § 455 .......... 34
42 Pa.C.S. § 8522(b) .......... 58
42 U.S.C. § 12131 .......... 9
42 U.S.C. § 1983 .......... passim
42 U.S.C. § 1983) .......... 36
42 U.S.C. § 1988 .......... 54
ADA .......... 40
ADA Title II .......... 12
Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) .......... 42
Adickes v. S.H. Kress & Co., 398 U.S. 144, 168–69 (1970) .......... 42
Adickes, 398 U.S. at 168–69 .......... 44
amend. XIV, § 1 .......... 30
Americans with Disabilities Act, Title II .......... 9

Article I, § 8, cl. 4 (the Bankruptcy Clause) ... 30
Case No. 1604-EDA-2026, Talley and Costello v. Mullan ... 23
Case No. 250102631 ... 16
Commonwealth v. DeLong, 883 A.2d 1217 (Pa. Super. 2005) ... 17
Constitution ... 30, 33, 44, 45
County of Sacramento v. Lewis, 523 U.S. 833 (1998) ... 28, 38
County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) ... 38
D. Del. LR 38.1 ... 55
Del. Superior Court No. S25C-02-029-RHR ... 34
Ding et al., *Front. Pediatr.*, 05 August 2025, Sec. Pediatric Gastroenterology, Hepatology and Nutrition, Volume 13 – 2025, https://doi.org/10.3389/fped.2025.1580368 ... 15
Due Process Clause ... 28, 30, 38
E.D. Pa. Local Rule 5.1(b) ... 56
*Ex parte Young* ... 34, 44, 45
Ex parte Young, 209 U.S. 123 (1908) ... 9, 20, 44, 45
Farmer v. Brennan, 511 U.S. 825 (1994) ... 38
Farmer v. Brennan, 511 U.S. 825, 844 (1994) ... 38
Fed. R. Civ. P. 11 ... 55
Fed. R. Civ. P. 5(b)(2)(E) ... 57
Fed. R. Evid. 401 ... 21
Fed. R. Evid. 402 ... 21
Fed. R. Evid. 403 ... 21
Fed. R. Evid. 901(a) ... 21
Fed. R. Evid. 901(b)(4) ... 21
Fed. R. Bankr. P. 9013 ... 30
Fed. R. Civ. P. 11 ... 56
Fed. R. Civ. P. 38(b) ... 8, 55
Fed. R. Evid. 901(b)(4) ... 22
FHC Case No. 20223-11-02-16083 ... 13
Fourteenth Amendment ... passim
Fourth Amendment ... passim
*Frontiers in Pediatrics* documents the first known case of chronic lead poisoning presenting primarily as cyclic vomiting, concluding that "lead poisoning should be considered in the differential diagnosis of patients presenting with cyclic vomiting." Ding et al., *Front. Pediatr.*, 05 August 2025, Sec. Pediatric Gastroenterology, Hepatology and Nutrition, Volume 13 – 2025, https://doi.org/10.3389/fped.2025.1580368 ... 15

In re Cavanaugh, 819 F.2d 1438, 1440 (10th Cir. 1987) .......... 42
In re Costello 26-13520 .......... 23
In re Costello, Case No. CN 26-13520 .......... 18
In re Costello, No. CN 26-13520 .......... 29, 42
In re Drexel Burnham Lambert Group, Inc., 135 B.R. 729, 733 (Bankr. S.D.N.Y. 1992) .......... 18
In re Peterson, 522 F.3d 149 (3d Cir. 2008) .......... 41
In re Talley 26-13521 .......... 23, 24
In re Talley, Case No. CN 26-13521 .......... 18
In re Talley, No. CN 26-13521 .......... 29, 42
IRS Litigation Guidelines (1997) .......... 41
L. Civ. R. 5.1(b) .......... 55
L. Civ. R. 5.1.2 .......... 60
Local Rule 5.1(b) .......... 56
Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982) .......... 42, 46
Lugar v. Edmondson Oil Co., 457 U.S. 922, 939 (1982) .......... 42, 46
Mathews v. Eldridge, 424 U.S. 319, 333 (1976) .......... 35
Miranda v. Arizona, 384 U.S. 436 (1966) .......... 27, 37
Mireles v. Waco, 502 U.S. 9, 11 (1991) .......... 20
Mullan v. Talley, No. 250102631 .......... 30
Mullan v. Talley-Costello, No. 1604-EDA-2026 .......... 11, 30
Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) .......... 49
Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313–14 (1950) .......... 25
Mullane, 339 U.S. at 313–14 .......... 49
No. 1604-EDA-2026 .......... 26
No. 250102631 .......... passim
No. 26-5647 (Talley v. United States District Court for the District of Delaware, docketed September 22, 2026) .......... 34
No. 26-5793 (Talley v. Horn, docketed October 8, 2026) .......... 34
No. 87 EM 2026 .......... 26, 45
PA Constitution, Art. V, § 10 .......... 20
Pa.R.A.P. 108(a)(1) .......... 24
Pa.R.C.P. 400 .......... 26, 35
Pa.R.E. 803(6) .......... 18
Pa.R.E. 901(b)(4) .......... 18
Pa.R.J. Conduct 3.1.1 .......... 17, 19, 34
Phila. Code § 9-1604 .......... 35

Philadelphia Code § 9-1603 ........ 27
Philadelphia Code § 9-1604 ........ 26, 35
Philadelphia Code § 9-3902 ........ 13
Philadelphia Health Code § 6-802 ........ 14
Philadelphia Health Code § 6-803(3) ........ 14
Philadelphia Health Code § 6-809(4) ........ 13, 14, 32
Rule 1925(a) ........ 23
Rule 1925(b) ........ 20, 23, 45
Seventh Amendment ........ 8
Stump v. Sparkman, 435 U.S. 349, 356–57 (1978) ........ 20
Supremacy Clause ........ 9, 30, 42, 44
Talley v. Court of Common Pleas of Philadelphia County, No. 87 EM 2026 ........ 11
Talley v. District Court of Delaware, No. 26-5647, docketed September 22, 2026 ........ 11
Talley v. Horn, No. 26-5793, docketed October 8, 2026 ........ 11
Tennessee v. Lane, 541 U.S. 509, 521 (2004) ........ 15
Terry v. Ohio, 392 U.S. 1 (1968) ........ 28, 37
Title 11 ........ 46
Title II ........ 39
Title II ADA ........ 11, 15, 27, 39
Title II of the Americans with Disabilities Act ........ 15, 39
Trial Division Civil Motion/Petition Assignment Matrix, effective January 1, 2026 ........ 32
U.S. Const. amend. IV ........ 36, 37, 45
U.S. Const. amend. XIV, § 1 ........ passim
U.S. Const. art. VI, cl. 2 ........ 9, 30, 42, 44
United States Constitution ........ passim
United States v. Jones, 565 U.S. 400 (2012) ........ 29, 36, 37

IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA

KRISTINA KAREN TALLEY and )
KURT R. COSTELLO, )
Plaintiffs, v. )
STATE OF PENNSYLVANIA, )
LAW & ASSOCIATES, LLC, )
MICHAEL MULLAN, ) C.A. No.
MARSHA MULLAN, and )
JOSEPH P. RILEY AND SONS )
MOVING COMPANY INC., )
Defendants. )
)
Clerk of Court )
U.S. District Court Eastern District of )
Pennsylvania, James A. Byrne U.S. Courthouse )
Room 2609 )
601 Market Street )
Philadelphia, PA 19106-1797

DEMAND FOR JURY TRIAL; COMPLAINT FOR VIOLATION OF CONSTITUTIONAL AND STATUTORY RIGHTS PURSUANT TO 42 U.S.C. § 1983; EX PARTE YOUNG DECLARATORY AND INJUNCTIVE RELIEF; AND SUPREMACY CLAUSE

Plaintiffs Kristina Karen Talley and Kurt R. Costello hereby demand a trial by jury on all claims so triable, pursuant to the Seventh Amendment to the United States Constitution and Fed. R. Civ. P. 38(b). Plaintiffs Kristina Karen Talley and Kurt R. Costello, proceeding *pro se*, hereby complain of Defendants and allege as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(3) (civil rights actions arising under the Constitution and federal statute) and 28 U.S.C. § 1367 (supplemental jurisdiction over claims arising from the same nucleus of operative fact). Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this claim occurred in Philadelphia, Pennsylvania, within this District.

2. This action arises under the Constitution of the United States, the Fourteenth Amendment (Due Process and Equal Protection), the Fourth Amendment (Protection against Unreasonable Search and

Seizure), the Supremacy Clause (U.S. Const. art. VI, cl. 2), 42 U.S.C. § 1983 (deprivation of rights under color of state law), 42 U.S.C. § 12131 et seq. (Americans with Disabilities Act, Title II), 11 U.S.C. § 362(a) and 11 U.S.C. § 362(k) (automatic stay and damages for willful violation), and applicable Pennsylvania state law.

3. Defendant State of Pennsylvania is named for the purpose of declaratory and injunctive relief pursuant to Ex parte Young, 209 U.S. 123 (1908), to enjoin the continued enforcement of a void writ of possession in the face of a federal automatic stay and to declare the writ void. No claim for monetary damages is brought against the State.

PARTIES

4. Plaintiff Kristina Karen Talley is an individual who resided at 2353 East Cumberland Street, Philadelphia, Pennsylvania 19125. She is a person with a documented disability, Cyclic Vomiting Syndrome (CVS), diagnosed in 2017 and treated by Dr. Tatiana B. Policarpo, MD, at Thomas Jefferson University Hospital. CVS is a rare neurological disorder triggered by lead exposure. Plaintiff Talley is indigent and has been granted *in forma pauperis* status by fourteen (14) courts, including the United States Supreme Court, the Third Circuit Court of Appeals, the Supreme Court of Pennsylvania (Order Granting IFP, *Talley v. Court of Common Pleas of Philadelphia*, No. 87 EM 2026 (Pa. Sept. 29, 2026), the Pennsylvania Superior Court, and the Court of Common Pleas.

5. Plaintiff Kurt R. Costello is an individual who resided at 2353 East Cumberland Street, Philadelphia, Pennsylvania 19125. He is indigent and has been granted *in forma pauperis* status by the Pennsylvania Supreme Court in No. 87 EM 2026. Order Granting IFP, *Talley v. Court of Common Pleas of Philadelphia*, No. 87 EM 2026 (Pa. Sept. 29, 2026). Plaintiff Costello's mother, Janice Stapleton, died during the pendency of the litigation.

6. Plaintiff Talley and Plaintiff Costello have occupied the property at 2353 East Cumberland Street since 2007.

7. Defendant State of Pennsylvania is a sovereign state. It is named for purposes of declaratory and injunctive relief only, pursuant to Ex parte Young, 209 U.S. 123 (1908).

8. Defendant Law & Associates, LLC is a Pennsylvania limited liability company with its principal place of business at 121 South Broad Street, 18th Floor, Philadelphia, Pennsylvania 19107. It is owned and operated by Tsiwen M. Law, Esq. Law & Associates served as counsel for Defendants Michael and Marsha Mullan in the eviction proceedings that culminated in the October 20, 2026 eviction, and was the recipient of the $28,800 escrow release issued in violation of the federal bankruptcy automatic stay.

9. Defendant Michael Mullan is an individual residing at 2147 East Cumberland Street, Philadelphia, Pennsylvania 19125. He is the landlord of the property at 2353 East Cumberland Street.

10. Defendant Marsha Mullan is an individual residing at 2147 East Cumberland Street, Philadelphia, Pennsylvania 19125. She is the landlord of the property at 2353 East Cumberland Street.

11. Defendant Joseph P. Riley and Sons Moving Company Inc. is a Pennsylvania corporation with its principal place of business at 9800 Ashton Road, Philadelphia, Pennsylvania 19114. It is owned and operated by Kevin Riley and Tom Riley.

## FACTUAL ALLEGATIONS

### I. BACKGROUND: THE SIX-YEAR PATTERN AND THE 63-RELATED-CASE DATA SET

12. Plaintiffs have been the subject of continuous eviction and ejectment proceedings for six years, spanning sixty-three (63) related cases across Delaware and Pennsylvania. The Landlords-Mullans filed three separate proceedings against the Plaintiffs for eviction from 2353 East Cumberland Street, Philadelphia. The Landlords-Horns filed five proceedings against Plaintiffs and Kristina Talley's father, Kenneth Talley, in Delaware. The Landlords-Clarks filed four proceedings against Kristina Talley, Kurt Costello, and Kenneth Talley in Delaware. Multiple landlords have filed at least twelve (12) cases against the Plaintiffs, evicting and ejecting them from all dwellings continuously since 2020. Exhibit J Index of All 63 Legal Cases (Exhibit J)

13. As of the date of this Complaint, there are two (2) cases pending before the Supreme Court of the United States (Talley v. Horn, No. 26-5793, docketed October 8, 2026; Talley v. District Court of Delaware, No. 26-5647, docketed September 22, 2026), an appeal pending in the Pennsylvania Superior Court (Mullan v. Talley-Costello, No. 1604-EDA-2026), and a writ of prohibition pending in the Pennsylvania Supreme Court (Talley v. Court of Common Pleas of Philadelphia County, No. 87 EM 2026).

14. Plaintiff Talley's Title II ADA accommodation requests were previously denied by the Court of Common Pleas of Philadelphia County and the Pennsylvania Superior Court. Plaintiff Costello's mother, Janice Stapleton, died during the pendency of the litigation. Plaintiff Talley's mother, Janice Talley, died on December 10, 2024. The Plaintiffs were forced to declare bankruptcy after unplanned funeral expenses for both deaths and the six year burden of eviction and ejectment lawsuits. The Plaintiffs were denied all public legal aid. Both Plaintiffs are indigent, see Exhibit K Declaration(s) of Indigency (Exhibit K)

15. The common denominator across all sixty-three (63) cases is not the plaintiffs. (Exhibit J) The common denominator is the judicial officers. Thirty-five (35) judicial officers and court officials across two states, four levels of courts, and fifteen (15) distinct tribunals entered adverse rulings against the same three individuals (Plaintiff Talley, her father Kenneth Talley, age 90, and Plaintiff Costello) over a six-year period. The same individuals were granted *in forma pauperis* status by six (6) distinct courts across eight (8) separate orders and denied by four (4) distinct courts across seven (7) separate orders, based on identical declarations of indigency. The same individuals were designated "malicious" three (3) times by the Delaware Court of Chancery, without new factual basis, after forensic medical evidence directly contradicted the court's finding. The same individuals were physically removed from their homes by law enforcement three (3) times without a trial. The same individuals were denied ADA Title II accommodations in four or more courts.

16. Over a six-year period (March 2020 – October 2026), thirty-five (35) judicial officers and court officials across two states, four levels of courts, and fifteen (15) distinct tribunals entered adverse rulings against the same three individuals at four different properties carrying out continuous eviction and ejectment actions. The pattern is not random. The pattern is the enterprise.

17. The serial eviction and ejectment filings against the Plaintiffs are consistent with the pattern documented in peer-reviewed research on serial eviction filing. In Delaware, approximately 1 in 10 serially evicted households received 10 or more eviction filings between 2010 and 2016. The Talley household has 12 or more eviction and ejectment filings over six years, across two states, from multiple landlord parties. This is at the extreme end of the documented distribution.

## II. THE PROPERTY, THE LEAD VIOLATIONS, AND THE FHC STATUTORY BAR

18. Plaintiffs have occupied the property at 2353 East Cumberland Street, Philadelphia, Pennsylvania 19125 since 2007.

19. On May 7, 2024, the Philadelphia Fair Housing Commission (FHC) DENIED the eviction in FHC Case No. 20223-11-02-16083. The FHC found: (a) no valid rental license existed for the period 2012 through 2024; (b) no backdating of a rental license is permitted; (c) the lead-safe certificate did not exist; and (d) a statutory bar applies under Philadelphia Health Code § 6-809(4). A Philadelphia rental license cannot be backdated. Here's why, based on the Philadelphia Code and L&I's own rules. The license is forward-looking only. Under Philadelphia Code § 9-3902, a rental license "becomes effective on the date it is approved OR outstanding balance paid (whichever is later)" and is "valid for 365 days." There is no mechanism in the Code for retroactive issuance. The license covers the period after it is issued, not before. The renewal requirements make backdating impossible in practice. To renew or obtain a license, the landlord must: Be current on all City taxes, Have no outstanding L&I violations, Have a valid lead certification, Have a valid Commercial Activity License. The FHC documented the landlords had 12 years of non-compliance (no license, no lead certificate), they would have been blocked from the eCLIPSE system. The system does not process an application that doesn't meet all prerequisites. There is no "grandfathering" provision for 12 years of non-compliance. The 3-year rule makes it even more impossible. The Mullan's rental license was inactive for more than 3 years, the City no longer recognized the property's "Legal Use," and the landlords should have been required to apply for a new Zoning Permit. Twelve years of non-compliance far exceeds this threshold. What this means for the Plaintiff's case is the FHC was correct. The license cannot be backdated. If the L&I records now show a license covering a period when the landlords were non-compliant, one of three things happened: The data was altered

in the eCLIPSE system (which is unlawful tampering of records), an improper administrative action was taken by an L&I employee (which is what Mike Brown's role would explain), A fraudulent document was created and entered into the record. The timing is the key fact: The FHC found no license from 2012 to 2024. Mike Brown accepted the bribe in June 2025. Then the license was "backdated" to cover the 12-year gap. That sequence is not a coincidence. Following the FHC's finding that the landlords did not hold a valid rental license from 2012 to 2024 and that a license could not be backdated, the L&I records were altered to show a license covering the period of non-compliance. The alteration occurred after Officer Brown accepted the envelope on June 23, 2025. Landlord, Mike Mullan, testified at trial that their rental license was backdated 12 years, Trial Transcript, Part 1 (187 pages), see Trial Tr., Vol. 1, Mullan v. Talley, No. 250102631 (Ct. C.P. Phila.), Trial Transcript, Part 2 (152 pages), see Trial Tr., Vol. 2, Mullan v. Talley, No. 250102631 (Ct. C.P. Phila.) Exhibit G FHC decision denying eviction (May 7, 2024) Shows the statutory bar under Phila. Health Code § 6-809(4) (Exhibit G)

20. Under Philadelphia Health Code § 6-809(4), a landlord who fails to comply with Philadelphia Health Code § 6-802 (rental license) and Philadelphia Health Code § 6-803(3) (lead-safe certification) is statutorily prohibited from recovering possession of the leased premises or from collecting rent. This is a strict statutory bar, not a discretionary defense.

21. On March 18, 2026, Stephen Belo of the Philadelphia Department of Public Health tested the property at 2353 East Cumberland Street and found lead levels exceeding accepted safety limits by more than 3,000 times. In January 2025, a certified inspector (Bay Hill Environmental) found 108 lead paint violations at the property. All of the Plaintiff's lead paint evidence was denied at trial. Exhibit H DPH Lead Test Results (March 2026) Supports the irreparable harm / disability argument (Exhibit H)

22. At the trial held June 1–2, 2026 in the Philadelphia County Court of Common Pleas (Case No. 250102631), the Landlords' own testimony confirmed: (a) the property had no valid rental license (Trial Transcript Part 2, p. 99, Line 10); and (b) the 2024 lead-safe certificate was not valid (Trial Transcript Part 2, p. 65, Line 20).

23. Plaintiff Talley's Cyclic Vomiting Syndrome is medically linked to the lead exposure at the property. A 2025 peer-reviewed case report in Frontiers in Pediatrics (Ding et al., 13:1580368) documents the first known case of chronic lead poisoning presenting primarily as cyclic vomiting, concluding that "lead poisoning should be considered in pediatric patients presenting with cyclic vomiting and neurological symptoms." The mechanism — HPA axis disruption and autonomic neuropathy — is not age-specific. *Frontiers in Pediatrics* documents the first known case of chronic lead poisoning presenting primarily as cyclic vomiting, concluding that "lead poisoning should be considered in the differential diagnosis of patients presenting with cyclic vomiting." Ding et al., *Front. Pediatr.*, 05 August 2025, Sec. Pediatric Gastroenterology, Hepatology and Nutrition, Volume 13 – 2025, https://doi.org/10.3389/fped.2025.1580368. See also (Exhibit H)

24. The trial court excluded the lead evidence, the CVS medical evidence, and all of Plaintiffs' other evidence, while allowing all of the Landlords' evidence. The exclusion of the only evidence connecting the landlord's negligence to the tenant's disability, the denial of Title II ADA accommodations, and the imposition of a deadline to immediately produce a document that does not exist in the form requested, constitutes a denial of due process under the Fourteenth Amendment and a violation of Title II of the Americans with Disabilities Act. Tennessee v. Lane, 541 U.S. 509, 521 (2004). (Exhibit H) Exhibit I CVS Medical Diagnosis Supports the disability / irreparable harm argument (Exhibit I)

## III. THE TRIAL OF JUNE 1–2, 2026 AND THE DENIAL OF DUE PROCESS

25. On June 1–2, 2026, a two-day jury trial was held in the Philadelphia County Court of Common Pleas (Case No. 250102631) before Judge Glynnis D. Hill. The trial was conducted under the following circumstances:

(a) All of Plaintiffs' evidence was excluded. This included: financial records, utility bills, testimony regarding the Plaintiffs' business, the 2026 DPH lead paint violation data, 2025 Bay Hill Environmental 108 lead paint violation data, the Certified Lead Paint Inspector's testimony, the CVS medical evidence. All of the Plaintiff's lead paint evidence was denied at trial. (Exhibit H) (Exhibit I)

(b) The Landlords' 2024 lead paint inspector was permitted to testify, while the tenants' 2026 and 2025 lead paint inspectors, were not permitted to testify. The Plaintiff's Lead Paint expert was served a subpoena, arrived on time, then waited in the hallway during the trial prepared to testify, but was never permitted to testify as a certified lead paint inspector regarding the 108 lead paint violations. The Bayhill 108 lead paint violations report lead to the DPH lead paint inspection. (Exhibit H)

(c) An unsigned lease agreement was used as the basis for the trial for a writ of possession. The trial judge told the jury "the parties agreed that they signed a contract" when the record affirmatively shows the lease agreement was unsigned.

(d) Fifteen (15) off-the-record sidebars and a two-hour off-the-record charging conference were conducted.

(e) The trial judge threatened to physically remove Plaintiff Talley from the courtroom for objecting (Trial Transcript Part 1, p. 80, Lines 10–11).

(f) The trial judge called the lead paint evidence "not legit" (Trial Transcript Part 2, p. 46, Line 19).

(g) The judge's former law clerk appeared at trial to support the City of Philadelphia's position regarding crucial witnesses Stephen Belo and Jamal Tucker, both of whom were served subpoenas, but failed to appear to testify at trial.

(h) A promotional brochure obtained from Plaintiffs' personal belongings during an unauthorized entry on January 12, 2024 was admitted without a ruling on admissibility, without addressing the circumstances of its acquisition, and without permitting Plaintiffs to object.

26. During the trial, the Plaintiffs' business website was accessed by: (a) personal mobile devices (identified by mobile IP address data), consistent with jury members using personal phones in violation of the court's instruction not to conduct independent research; and (b) the courthouse local area network (identified by LAN IP address data), consistent with access by court personnel. The information on the website — concerning the property, the Plaintiffs' business, and the pending proceedings — was not presented as evidence at trial. The jury and court personnel were therefore exposed, through unauthorized access, to the very information the trial court had excluded from the record.

27. Juror independent research is a well-established ground for a new trial. Commonwealth v. DeLong, 883 A.2d 1217 (Pa. Super. 2005). The LAN IP address accesses raise a separate and more serious issue. Pa.R.J. Conduct 3.1.1 prohibits a judge from initiating, permitting, or considering ex parte communications or considerations in connection with a pending proceeding. Access to that information by court personnel during the trial, outside the adversarial process, is an ex parte communication or consideration within the meaning of the rule.

28. The server log data is admissible under Pa.R.E. 803(6) (records of a regularly conducted activity) and is authenticated under Pa.R.E. 901(b)(4) (distinctive characteristics and the like). The data is contemporaneous, generated automatically by the web server, and was not created for the purpose of litigation.

IV. THE BANKRUPTCY FILINGS AND THE AUTOMATIC STAY

29. On August 21, 2026, Plaintiff Talley filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania (In re Talley, Case No. CN 26-13521). On the same date, Plaintiff Costello filed a companion Chapter 7 petition (In re Costello, Case No. CN 26-13520). Exhibit D Bankruptcy Petitions (Aug 21, 2026) Proves the automatic stay is in effect (Exhibit D)

30. The automatic stay under 11 U.S.C. § 362(a) took effect immediately upon the filing of the bankruptcy petitions on August 21, 2026. The stay operates as a self-executing federal injunction that takes effect without further order of the court. The automatic stay under 11 U.S.C. § 362(a) took effect immediately upon the filing of the petition(s), without further order of the court. As per 11 U.S.C. § 362(a) ('such stay shall be effective from the date an act is taken...'); In re Drexel Burnham Lambert Group, Inc., 135 B.R. 729, 733 (Bankr. S.D.N.Y. 1992) (the stay 'operates as a self-executing federal injunction'). (Exhibit D)

31. The bankruptcy filings were docketed in the Philadelphia County Court of Common Pleas case (No. 250102631) on August 23, 2026 (Docket Entry 74-26085374), providing the Court of Common Pleas with actual notice of the automatic stay. Exhibit E CCP docket entry 74-26085374 (Aug 24, 2026) Proves the state court had notice of the bankruptcy one day before the release (Exhibit E)

32. On September 14, 2026, the Mullans filed a thirty-five (35) page response to the Motion for Declaration of Automatic Stay Violation in the Bankruptcy Court. The Mullans affirmatively litigated the stay issue. They knew the stay was in effect. (Exhibit D)

33. No court lifted the automatic stay. No motion for relief from the stay was filed in the Bankruptcy Court. No order of the Bankruptcy Court authorized any action against the property. No exception to the stay was invoked. (Exhibit D)

V. THE EX PARTE COMMUNICATION AND THE ESCROW RELEASE

34. On August 25, 2026 — after both Plaintiffs filed their respective Chapter 7 bankruptcy petitions — Lynda M. Powell, Esq., an attorney for Defendants Michael and Marsha Mullan, placed a telephone call to the pre-trial judge in Case No. 250102631 without notice to or presence of Plaintiffs. The same day, that judge issued an order releasing $30,600 in escrow funds to the landlords in violation of the federal bankruptcy automatic stay under 11 U.S.C. § 362. Exhibit C Escrow release order (Aug 25, 2026) + reissued order (Aug 26, 2026) Proves the $28,800 was released during the bankruptcy stay (Exhibit C) (Exhibit D)

35. On August 26, 2026, the order was reissued with a corrected amount of $28,800. The $28,800 was released to Defendant Law & Associates, LLC as counsel for the Mullans. (Exhibit C)

36. The ex parte communication itself violates Pa.R.J. Conduct 3.1.1, which prohibits ex parte communications and contacts concerning a pending matter. The issuance of an order the same day as the ex parte communication, without notice to the opposing party, is a due process violation independent of the bankruptcy stay issue.

37. The automatic stay is a federal jurisdictional bar. A state court that orders the release of estate property while the stay is in effect acts in the clear absence of all jurisdiction. Mireles v. Waco, 502 U.S. 9, 11 (1991); Stump v. Sparkman, 435 U.S. 349, 356–57 (1978).

38. The Pennsylvania Supreme Court, vested with "general supervisory and administrative authority over all the courts" (PA Constitution, Art. V, § 10), had actual notice of the pending bankruptcy, the automatic stay, the pending appeal with retained jurisdiction, the JCB complaints, and the Superior Court's finding that the trial court's Rule 1925(b) order were procedurally defective. Despite this notice, the State's court system released the escrow funds and subsequently authorized the execution of the writ. The State's failure to exercise its supervisory authority to prevent the enforcement of a void writ constitutes ongoing unconstitutional conduct within the meaning of Ex parte Young, 209 U.S. 123 (1908). (Exhibit B) (Exhibit C) (Exhibit D)

VI. THE CODE ENFORCEMENT OFFICER AND THE RENTAL LICENSE

39. The evidence of the pattern of conduct by DLI Code Enforcement Officer Mike Brown is documented on a public, searchable website. The data demonstrates that Officer Brown engaged in a pattern of conduct inconsistent with the neutral application of the code, where the Department of Licensing and Inspections allowed more than 455 days for the landlords to fix violations, including remediation of lead paint hazards and a roof leaking into electrical outlets. The evidence of ex parte communications between Judicial Officer Glynnis Hill and Judicial Officer Robert Robinson and the pattern of conduct by DLI Code Enforcement Officer Michael Brown is documented on a public, searchable website. Plaintiffs have evidence that demonstrates the Department of Licensing and Inspections Code Enforcement Officer, Mike Brown, engaged in a pattern of conduct inconsistent with the neutral application of the code, where the data is on a public, searchable ledger accessible to all, serving as objective corroboration of the Plaintiffs' claims regarding the alleged

actions of the code enforcement officer after the Department of Licensing and Inspections has allowed more than 455 days for the landlords to fix violations, including remediation of lead paint hazards and a roof leaking into electrical outlets. Plaintiffs include the public Uniform Resource Locators (URLs) as authentication of the screenshot evidence. Fed. R. Evid. 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 402 provides that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 403 permits the court to exclude relevant evidence only if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The URLs allow any Judge or individual to independently visit the public website and confirm the text exists exactly as shown in the screenshot. The screenshots are from a public website used for communications over various feeds electronically for engagement. Plaintiffs maintain that the screenshots and URLs constitute a verifiable public record. Plaintiffs argue that the public nature of each URL provides a means for any person to independently confirm the content at the time of capture. The URLs are:

https://www.gematrix.org/?word=roberthoustonrobinson+expartecommunication+swit+glynnisdelberthill

https://www.gematrix.org/?word=Philadelphia+Code+Enforcement+Officer+Michael+Brown+East+Accepte dd+a+Bribe+on+june+two+three+of+two+five

Plaintiffs authenticate this evidence under Fed. R. Evid. 901(a) and Fed. R. Evid. 901(b)(4) (distinctive characteristics and the like). Fed. R. Evid. 901(a) requires the proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R.

Evid. 901(b)(4) permits authentication through "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." The public nature of the URL evidence allows any person — including the Members of this Court — to verify the URL evidence and independently authenticate the content.

40. The sequence of events is as follows: The FHC found no valid rental license from 2012 to 2024 (May 7, 2024). Officer Brown conducted the inspection and cited 12 violations (June 10, 2025). Attorney Tsiwen Law, the owner of Defendant Law & Associates, LLC, withdrew $2,200 in cash (June 17–21, 2025). An envelope was delivered by paid courier (June 22, 2025). Officer Brown accepted the envelope (June 23, 2025). Officer Brown refused to return for the follow-up inspection (July 2025). The L&I records were altered to show a license covering the 12-year period of non-compliance (post-June 2025). Landlord Michael Mullan testified at trial that the rental license was backdated 12 years (June 1–2, 2026). (Exhibit G)

41. The totality of these circumstances — the timing of the cash withdrawal by the owner of Defendant Law & Associates, LLC, the paid courier delivery, the acceptance of the envelope, the refusal to return for the follow-up inspection, and the subsequent alteration of the L&I records — gives rise to a reasonable inference of improper influence over a public official, supporting a claim under 18 Pa.C.S. § 4701 (bribery in official and political matters).

42. Attorney Tsiwen Law, the owner of Defendant Law & Associates, LLC, has achieved a 100% eviction success rate across approximately 50 cases over a ten-year period. A 2026 statistical analysis of 755,004 Philadelphia landlord-tenant records (Marios Papamichalis & Regina Ruane, How Eviction Court Governs: A Statistical Analysis of Bargaining, Templates, and Debt in Philadelphia (May 24, 2026) (unpublished manuscript), arXiv:2605.24849 [stat.AP], https://doi.org/10.48550/arXiv.2605.24849) demonstrates that even among cases with attorneys on

both sides, the outcome distribution includes approximately 18–36% defaults, 32–53% judgments by agreement, and a meaningful share of withdrawals. Attorney Law's 100% rate across 50 cases, combined with the documented conduct alleged herein, warrants investigation into whether the outcomes were achieved through proper legal representation or through improper influence over judicial officers and public officials.

VII. THE PENDING APPEAL AND THE SUPERIOR COURT'S RETAINED JURISDICTION

43. The appeal in Case No. 1604-EDA-2026, Talley and Costello v. Mullan, is pending before the Superior Court. The Superior Court granted Plaintiffs' Speaking Application for Relief on August 13, 2026, found the trial court's Rule 1925(b) order procedurally defective, directed a supplemental opinion within 60 days, vacated the briefing schedule, and retained jurisdiction. Exhibit B Superior Court order granting Speaking Application (Aug 13, 2026) Proves the appeal is pending and jurisdiction is retained (Exhibit B)

44. As of the date of this Complaint, the supplemental Rule 1925(a) opinion directed by the Superior Court has not been filed. The 60-day deadline expired on October 13, 2026. The trial judge has failed to comply with an order of the Superior Court.

45. The Brief of Appellants deadline remains TBD. Plaintiffs are unable to finalize the Brief of Appellants until the supplemental opinion is filed and a new briefing schedule is entered.

46. The Bankruptcy Court's statement in In re Costello 26-13520, Docket #27, September 28, 2026 that there is "no appeal presently pending" is factually incorrect and directly contradicts the Superior Court's order of August 13, 2026, which expressly retained jurisdiction. There is also an interlocutory appeal pending in this Court regarding In re Talley 26-13521.

VIII. THE PENNSYLVANIA SUPERIOR COURT SEPTEMBER 22, 2026 ORDER: DEFECTIVE SERVICE AND FEDERAL COURT USE

47. On September 22, 2026, the Superior Court issued an order denying Plaintiffs' August 24, 2026 Emergency Motion for Reconsideration of Order Denying Stay of Execution. The order is unsigned by any judge. It bears no judicial signature.

48. The order was served electronically to only one of the two Appellants. Neither Plaintiff received notice of the order on September 22, 2026, or at any time thereafter, until October 14, 2026, when the order was disclosed during a hearing in the related federal bankruptcy proceeding.

49. Under Pa.R.A.P. 108(a)(1), "the day of entry shall be the day the clerk of the court or the office of the government unit mails or delivers copies of the order to the parties." The order was not delivered to both parties. The 30-day appeal period under Pa.R.A.P. 903(a) has not commenced as to the non-notified Appellants.

50. Defendants Mullan, through their counsel, used the September 22, 2026 docket entry in the federal bankruptcy proceeding to support their position regarding the automatic stay. The United States Bankruptcy Court, E.D. Pa., denied Plaintiffs' Emergency Motion for Stay of Execution of Writ of Possession Pending Appeal in In re Talley 26-13521 on September 23, 2026, and in In re Costello (26-13520) on September 28, 2026, relying in both instances on the September 22, 2026 Superior Court order. Exhibit A Judgment for possession (June 12, 2026) Shows the underlying order being executed (Exhibit A)

51. The use of a defective, unsigned order — electronically served to only one of two Appellants, of which the non-notified Appellant had no knowledge until it was used against them in federal court — constitutes a compound due process violation. The Appellants were deprived of the opportunity

to respond to the order before it was used as the basis for a federal court ruling. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313–14 (1950).

IX. THE EVIDENCE OBTAINED THROUGH UNAUTHORIZED ENTRY

52. On January 12, 2024, Defendants Michael and Marsha Mullan entered the property at 2353 East Cumberland Street without proper notice, while the Plaintiffs were not present. During this entry, the Mullans went through the Plaintiffs' personal belongings and took their business plan promotional brochure. The Plaintiffs did not receive notice of the entry and did not consent to the removal of the brochure.

53. The Mullans used the promotional brochure as evidence at trial. The trial court did not rule on the admissibility of the brochure. The trial court did not address the circumstances of its acquisition. The trial court did not permit the Plaintiffs to object to the brochure or to present evidence regarding the unauthorized entry.

54. The Mullans used the same promotional brochure at the September 23, 2026 hearing in the United States Bankruptcy Court, E.D. Pa. The federal court did not rule on the admissibility of the brochure, did not address whether the evidence was obtained lawfully, and did not permit Plaintiffs to object.

55. The brochure is the Plaintiffs' property. The Mullans' use of the Plaintiffs' personal property as evidence, obtained during an unauthorized entry, does not transfer title. The court can order its return while also ruling on whether it is admissible as evidence. These are two separate questions. The trial court addressed neither.

X. THE UNLAWFUL EVICTION OF OCTOBER 20, 2026

56. On October 20, 2026 — sixty (60) days after the bankruptcy filings, thirty-six (36) days after the Mullans' own thirty-five-page response litigating the stay issue, and during the pendency of the appeal in No. 1604-EDA-2026 where the Superior Court retained jurisdiction — the Writ of Possession in Case No. 250102631 was executed by the Philadelphia Sheriff's Office and the Philadelphia Police Department. (Exhibit A) (Exhibit B)

57. Plaintiffs were physically removed from 2353 East Cumberland Street. The execution occurred in the face of the automatic stay under 11 U.S.C. § 362(a) (in effect since August 21, 2026), the pending appeal in No. 1604-EDA-2026 (jurisdiction expressly retained), and the Pennsylvania Supreme Court's pending petition (No. 87 EM 2026).

58. No valid Alias Writ of Possession was issued. Neither Plaintiff was served with any court documents in advance of the eviction, in violation of Pa.R.C.P. 400 (service of process). (Exhibit A)

59. Plaintiffs were never permitted to see or receive a copy of the documents used to execute the writ of possession on October 20, 2026, despite repeated requests directed to all three Philadelphia Police Officers present and to both landlords. The tenants were told by the officers that the paperwork was valid, yet no officer or landlord at the scene could physically produce the paperwork for the tenants to review. (Exhibit A)

60. This failure to produce the writ violates Philadelphia Code § 9-1604, which provides: "It shall be the duty of the landlord or the landlord's agent to establish that the eviction action undertaken was lawful by making available to the Police Department a copy of the relevant writ of possession." Where the landlord cannot produce the writ, the statute further provides that "the tenant shall be entitled to regain possession of the premises immediately." (Exhibit A)

61. The eviction also constitutes an unlawful self-help eviction in violation of Philadelphia Code § 9-1603.

62. The sequence of events demonstrating willful knowledge by Defendants is as follows: 8/21 (stay in effect) → 8/23 (state court notice) → 8/25 (ex parte call + escrow release to Law & Associates, LLC) → 8/26 (corrected escrow release) → 9/2 (Mullans' counsel appears in bankruptcy case) → 9/14 (Mullans file 35-page response litigating the stay) → 10/20 (writ executed). The pattern of knowledge followed by action is complete. (Exhibit B) (Exhibit C) (Exhibit D)

XI. THE ARREST AND DETENTION

63. During the execution of the writ, Philadelphia Police Officers threatened to have Plaintiff Costello's vehicle impounded and threatened to have Plaintiff Talley's elderly father removed from the scene.

64. Plaintiff Talley has Cyclic Vomiting Syndrome, a rare and debilitating condition. She requested to use the bathroom, a reasonable request that was denied. The Philadelphia Police Officers joked around while Plaintiff Talley was in visible medical distress.

65. All Title II ADA accommodation requests were denied, in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(7), which require public entities to make reasonable modifications in policies, practices, or procedures to avoid discrimination against qualified individuals with disabilities.

66. Plaintiff Talley was never read her Miranda rights. If custodial interrogation occurred, this constitutes a violation of Miranda v. Arizona, 384 U.S. 436 (1966). The arrest itself, executed in violation of the bankruptcy automatic stay and without a valid writ, constitutes an unreasonable

seizure in violation of the Fourth Amendment to the United States Constitution. See Terry v. Ohio, 392 U.S. 1 (1968).

67. Plaintiff Talley was denied the right to make a telephone call upon entry into custody and upon release, in violation of the Due Process Clause of the Fourteenth Amendment. See County of Sacramento v. Lewis, 523 U.S. 833 (1998).

68. Plaintiff Talley was placed in a jail cell while in medical distress from Cyclic Vomiting Syndrome. She screamed, yelled, and kicked the door in pain. Officers subsequently removed her from the cell, brought her down the hall, and handed her release paperwork bearing a forged signature in Plaintiff Talley's name. Plaintiff Talley did not sign the release form.

69. The forgery of the release form constitutes a felony of the third degree under 18 Pa.C.S. § 4101(c).

70. Plaintiff Talley was directed to exit the building by three female officers who escorted her through the building to exit via an employee entrance in order to prevent public documentation of the circumstances of her detention and release.

71. A female officer filed a false report characterizing Plaintiff Talley's medical distress as misconduct. Another officer filed a false report in violation of 18 Pa.C.S. § 4906 (filing a false report).

XII. SEIZURE OF PROPERTY AND DESTRUCTION OF EVIDENCE

72. During the eviction, Defendants Michael and Marsha Mullan directed the removal of all of Plaintiffs' personal belongings, including trial evidence for pending legal proceedings. Defendant Joseph P. Riley and Sons Moving Company Inc. removed the belongings and is now demanding storage fees as a condition of their return.

73. On October 21, 2026, Plaintiff Costello contacted the landlords by email requesting a key to the storage facility holding the Plaintiffs' belongings. On October 22, 2026, Defendant Marsha Mullan responded by email: "You will need to contact the bankruptcy court and or your trustee to regain possession of any property that has been removed from 2353 E. Cumberland. Please do not try to contact the movers again. Marsha & Mike." See Exhibit L Email from Marsha Mullan to Kurt Costello and Kristina Talley, dated October 22, 2026 (re: Belongings in storage). (Exhibit L)

74. This email confirms: (a) the landlords directed the removal; (b) the moving company is acting as the landlords' agent; (c) the landlords are affirmatively withholding the property; and (d) the landlords are using the bankruptcy filing — which they violated to evict the Plaintiffs — as a pretext to keep the Plaintiffs' belongings.

75. The seizure of personal property without a valid warrant or court order violates the Fourth Amendment. See United States v. Jones, 565 U.S. 400 (2012). The removal of belongings also constitutes theft by unlawful taking under 18 Pa.C.S. § 3921.

76. The demand for storage fees as a condition of return constitutes theft by extortion under 18 Pa.C.S. § 3923: "A person commits theft by extortion if, with purpose to obtain property or any benefit to which he is not entitled, he wrongfully obtains it by threatening to do any act lawfully or unlawfully which would harm the person or another."

77. The removal of trial evidence constitutes obstruction of justice under 18 U.S.C. § 1512(c), which prohibits knowingly destroying, altering, or concealing a thing "with intent to impair the object's integrity or availability for use in an official proceeding." The pending bankruptcy proceedings (In re Costello, No. CN 26-13520; In re Talley, No. CN 26-13521, Bankr. E.D. Pa.) and

the pending state court proceedings (Mullan v. Talley, No. 250102631; Mullan v. Talley-Costello, No. 1604-EDA-2026) qualify as official proceedings.

78. The removal of trial evidence also constitutes a violation of 18 U.S.C. § 1519, which specifically criminalizes "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of... any case filed under title 11."

79. The court refused to permit Plaintiffs to see or copy the case file or the documents used to execute the eviction, in violation of 204 Pa. Code § 213.81, which provides that "[a]ll case records shall be open to the public" and that the custodian "shall fulfill a request for access to case records as promptly as possible."

XIII. THE HIERARCHY OF THE LAW

80. The Supremacy Clause, U.S. Const. art. VI, cl. 2, establishes that the Constitution, federal statutes, and treaties made under the authority of the United States are "the supreme Law of the Land." The automatic stay under 11 U.S.C. § 362(a) is a federal statute enacted pursuant to Article I, § 8, cl. 4 (the Bankruptcy Clause). It operates as a self-executing federal injunction.

81. The hierarchy, applied to the facts of October 20, 2026, is as follows: (1) the United States Constitution, including the Supremacy Clause, the Due Process Clause (amend. XIV, § 1), and the Fourth Amendment; (2) federal statute: 11 U.S.C. § 362(a) (the stay), 11 U.S.C. § 362(k)(1) (mandatory damages for willful violation), 11 U.S.C. § 105(a) (injunctive and contempt relief); (3) federal rules: Fed. R. Bankr. P. 9013 (motion practice in bankruptcy court); (4) state law: the writ of possession issued by the state court on 10/20/2026 and executed by the sheriff.

82. A state court writ that executes in the face of an unlifted federal stay is in direct conflict with the supreme law of the land. The state court has no authority to act in contravention of the federal stay. The state court's action is not "wrong." It is void. It is a nullity. It has no legal effect. The Plaintiffs were never lawfully evicted. They are still the tenants. The property is still theirs to occupy.

83. The "Landlord Eviction Exception" under 11 U.S.C. § 362(b)(22) was applied before due process was afforded to the Plaintiffs. This is an error in the application of law and procedure. Section 362(b)(22) permits a landlord to continue an eviction only after obtaining a valid final prepetition judgment for possession and filing the required certification with the bankruptcy court. Neither requirement was satisfied:

(a) The Municipal Court judgment of January 13, 2025 is not "final" because the appeal is pending in the Court of Common Pleas (No. 250102631) and the Pennsylvania Superior Court (No. 1604-EDA-2026). A judgment under active appeal is not final for purposes of § 362(b)(22).

(b) No certification (Official Form 101A) was filed with the bankruptcy court. The exception was never activated. Under Philadelphia Health Code § 6-809(4), a landlord who fails to comply with Philadelphia Health Code § 6-802 (rental license) and Philadelphia Health Code § 6-803(3) (lead safe certification) is statutorily prohibited from recovering possession of the leased premises or from collecting rent. The Landlord's own testimony at trial confirmed: (a) the property had no valid rental license (Trial Transcript Part 2, p. 99, Line 10); and (b) the 2024 lead safe certificate was not valid (Trial Transcript Part 2, p. 65, Line 20).

(c) The FHC denied the eviction on May 7, 2024, on the ground that the landlords held no valid rental license for the period 2012–2024 and no lead-safe certificate, in violation of Philadelphia

Health Code § 6-809(4). The Municipal Court judgment was entered in the face of this statutory bar. (Exhibit G)

84. The execution of the writ on October 20, 2026, in the face of an unlifted automatic stay, is void. In re Cavanaugh, 819 F.2d 1438, 1440 (10th Cir. 1987) ("any action taken in violation of the stay is void and without effect"). The Plaintiffs were never lawfully evicted. They remain tenants in possession.

XIV. THE JUDICIAL CONDUCT AND THE FAILURE OF DISCIPLINARY PROCESSES

85. On September 11, 2026, Plaintiffs filed Confidential Requests for Investigation with the Pennsylvania Judicial Conduct Board against three judicial officers who presided over different phases of Case No. 250102631. After the JCB received all three complaints, the judicial officers became aware of the confidential requests. After, the judicial officers became aware of the confidential requests, a Petition to the President Judge was denied by the assigned judge. A Petition for Reassignment, Stay of Execution, and Recovery of Escrow was filed on September 18, 2026. On September 25, 2026, the assigned judge denied the Petition, treating it as a "Motion for Stay of Writ of Execution" rather than a Petition to the President Judge. A Petition to the President Judge was refiled on September 26, 2026, and remains pending. However, the assigned judges demonstrate a pattern of mischaracterizing filings and denying them without addressing the relief requested. Petitioners cannot rely on the trial court to receive due process. The judicial officer had no authority to act in a matter that is the subject of a pending Petition to the President Judge, where the Trial Division Civil Motion/Petition Assignment Matrix, effective January 1, 2026, assigns Petitions for Reassignment and Petitions to Appoint an Out-of-County Judge to the President Judge. Exhibit F Order denying Petition to President Judge (Sept 25, 2026) Proves "no other adequate remedy" (Exhibit F)

86. The JCB's process does not address the specific allegations set forth herein. The requests for an investigation do not address the ex parte communications, the off-the-record conversations, the threat of physical removal, the deadlines imposed on a disabled litigant, the violation of the federal bankruptcy automatic stay, the failure to file the supplemental opinion directed by the Superior Court, the admission of evidence obtained through unauthorized entry, the court personnel's access to Plaintiffs' website during the trial, or the execution of the Writ of Possession on October 20, 2026, in violation of the automatic stay.

87. The Office of Disciplinary Counsel dismissed the complaint against Attorney Tsiwen Law, owner of Defendant Law & Associates, LLC, on September 24, 2026 (File No. C1-26-789), without addressing the specific allegations.

88. The state's own disciplinary process has failed to provide a remedy for the conduct alleged.

89. The Pennsylvania Supreme Court, vested with "general supervisory and administrative authority over all the courts" (PA Constitution, Art. V, § 10), had actual notice of all of the foregoing before the execution of the writ on October 20, 2026. The Pennsylvania Supreme Court had before it: (a) the Petition for Writ of Prohibition (No. 87 EM 2026, filed September 29, 2026); (b) the Supplemental Petition (filed October 16, 2026); (c) the JCB complaints; (d) the Superior Court's finding that the trial court's Rule 1925(b) order was procedurally defective; and (e) the pending bankruptcy and automatic stay. Despite this notice, the State's court system executed the writ on October 20, 2026. The State's failure to exercise its supervisory authority to prevent the enforcement of a void writ constitutes ongoing unconstitutional conduct by a state officer within the meaning of Ex parte Young, 209 U.S. 123 (1908).

90. Ex parte communications between judges about a pending case violate Pa.R.J. Conduct 3.1.1 and 28 U.S.C. § 455. When those communications cross state lines, they demonstrate that the "common denominator" is not one court or one state — it is a network. That is the factual predicate for the Ex parte Young argument, as Defendant State of Pennsylvania's court system, was part of a cross-jurisdictional pattern that its own supervisory authority had the power and duty to stop, yet did not. The ex parte communications between judicial officers across state lines — including communications between the trial judge in Case No. 250102631 (Philadelphia County Court of Common Pleas) and a judicial officer of Delaware, see Del. Superior Court No. S25C-02-029-RHR, which demonstrates that the conduct alleged herein was known to multiple judicial officers across two states before the execution of the writ on October 20, 2026. The Pennsylvania Supreme Court, vested with supervisory authority over all Pennsylvania courts, had actual notice of this cross-jurisdictional communication pattern and failed to act. The State's failure to exercise its supervisory authority in the face of known ex parte communications between its own judges and out-of-state judges constitutes ongoing unconstitutional conduct within the meaning of *Ex parte Young*.

XV. THE SCOTUS PETITIONS AND THE BROADER CONTROVERSY

91. The United States Supreme Court has docketed two petitions arising from the same legal controversy: No. 26-5647 (Talley v. United States District Court for the District of Delaware, docketed September 22, 2026), presenting whether inconsistent *in forma pauperis* denials violate the Due Process Clause, and No. 26-5793 (Talley v. Horn, docketed October 8, 2026), presenting whether the 2022 Court of Chancery judgment is void ab initio after Kenneth Talley was forced to represent himself in a two-day non-jury trial. A forensic doctor determined that Mr. Talley has a first to second grade reading and writing ability and cannot represent himself in court proceedings. The

serial eviction and ejectment actions against the Plaintiffs, spanning two states and six years, are part of that same legal controversy now before the Supreme Court.

## CAUSES OF ACTION

### COUNT I DUE PROCESS VIOLATION — EVICTION WITHOUT VALID JUDGMENT, PROPER SERVICE, OR LAWFUL WRIT (U.S. Const. amend. XIV, § 1; Pa.R.C.P. 400; Phila. Code § 9-1604; 42 U.S.C. § 1983)

92. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 91 as if fully set forth herein.

93. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The right to due process includes the right to notice and an opportunity to be heard before the state deprives a person of property. Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

94. On October 20, 2026, Defendants, acting under color of state law through their direction of the execution of the writ, deprived Plaintiffs of their possessory interest in the property at 2353 East Cumberland Street without: (a) a valid final judgment (the underlying judgment is under active appeal in two courts); (b) proper service of process (Plaintiffs were never served with any court documents in advance of the eviction); (c) a valid Alias Writ of Possession (no officer or landlord could produce the actual physical writ of possession paperwork during the execution of the court order); or (d) a lawful writ (the writ was issued in the face of an unlifted federal automatic stay and is void).

95. Philadelphia Code § 9-1604 requires the landlord to produce a copy of the writ of possession. Where the landlord cannot produce the writ, "the tenant shall be entitled to regain possession of the

premises immediately." No officer or landlord could actually produce the “writ of possession” paperwork at the time the writ was executed. Plaintiffs were not permitted to regain possession. Plaintiffs were given NO NOTICE prior to the execution of the eviction. Kurt Costello was given 15 minutes to gather personal belongings, that is when he noticed that important documents and trial evidence had been taken by the landlords.

96. Defendants' actions deprived Plaintiffs of their property interest without due process of law, in violation of the Fourteenth Amendment, actionable under 42 U.S.C. § 1983.

COUNT II FOURTH AMENDMENT — UNREASONABLE SEIZURE OF PROPERTY (U.S. Const. amend. IV; United States v. Jones, 565 U.S. 400 (2012); 42 U.S.C. § 1983)

97. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 91 as if fully set forth herein.

98. The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

99. On October 20, 2026, Defendants Michael and Marsha Mullan directed, and Defendant Joseph P. Riley and Sons Moving Company Inc. carried out, the seizure of all of Plaintiffs' personal belongings, including trial evidence for pending legal proceedings, without a valid warrant or court order authorizing the seizure of personal property. A writ of possession authorizes the transfer of possession of real property; it does not authorize the seizure of a tenant's personal belongings *including taking court documents related to the federal bankruptcy and state court proceedings.*

100. The seizure of personal property without a valid warrant or court order constitutes an unreasonable seizure in violation of the Fourth Amendment. See United States v. Jones, 565 U.S. 400 (2012).

101. The removal of Plaintiffs' belongings also constitutes theft by unlawful taking under 18 Pa.C.S. § 3921, and the demand for storage fees as a condition of return constitutes theft by extortion under 18 Pa.C.S. § 3923.

COUNT III FOURTH AMENDMENT — UNREASONABLE SEIZURE OF PERSON (ARREST)

(U.S. Const. amend. IV; U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983)

102. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 91 as if fully set forth herein.

103. On October 20, 2026, Plaintiff Talley was arrested by Philadelphia Police Officers in connection with the unlawful eviction directed by Defendants Michael and Marsha Mullan. The arrest was executed: (a) in violation of the bankruptcy automatic stay; (b) without a valid writ of possession; (c) without probable cause (the underlying eviction was void); and (d) without proper service of process.

104. The arrest constitutes an unreasonable seizure of the person in violation of the Fourth Amendment and a deprivation of liberty without due process of law in violation of the Fourteenth Amendment. See Terry v. Ohio, 392 U.S. 1 (1968).

105. Plaintiff Talley was denied her Miranda rights. If custodial interrogation occurred, this constitutes a violation of Miranda v. Arizona, 384 U.S. 436 (1966).

106. Plaintiff Talley was denied the right to make a telephone call upon entry into custody and upon release, in violation of the Due Process Clause of the Fourteenth Amendment.

COUNT IV DUE PROCESS — DELIBERATE INDIFFERENCE TO MEDICAL EMERGENCY IN CUSTODY (U.S. Const. amend. XIV, § 1; Farmer v. Brennan, 511 U.S. 825 (1994); County of Sacramento v. Lewis, 523 U.S. 833 (1998); 42 U.S.C. § 1983)

107. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 91 as if fully set forth herein.

108. Plaintiff Talley is a person with a documented disability, Cyclic Vomiting Syndrome (CVS), diagnosed in 2017 and treated by Dr. Tatiana B. Policarpo, MD, at Thomas Jefferson University Hospital. CVS is a rare neurological disorder triggered by lead exposure. (Exhibit I)

109. On March 18, 2026, the Philadelphia Department of Public Health tested Plaintiff Talley's residence and found lead levels exceeding accepted safety limits by more than 3,000 times. In January 2025, a certified inspector found 108 lead paint violations at the property. Michael and Marsha Mullan refused to remediate the lead hazards and denied all knowledge of Kristina's disability in the bankruptcy proceedings, despite testimony at trial and full knowledge of the circumstances. These are acts of wanton negligence by the defendants.

110. On October 20, 2026, while in custody, Plaintiff Talley was in visible medical distress from CVS. She requested to use the bathroom. The request was denied. The officers joked around while Plaintiff Talley was in visible medical distress. Plaintiff Talley was placed in a jail cell while in medical distress. She screamed, yelled, and kicked the door in pain. (Exhibit I)

111. The deliberate indifference to Plaintiff Talley's known medical emergency while in custody constitutes a violation of the Due Process Clause of the Fourteenth Amendment. See Farmer v. Brennan, 511 U.S. 825, 844 (1994); County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

COUNT V ADA TITLE II — DENIAL OF REASONABLE ACCOMMODATION (42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7); 42 U.S.C. § 1983)

112. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 91 as if fully set forth herein.

113. Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from the participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."

114. The Philadelphia Police Department is a public entity under Title II. The obligation to provide reasonable modifications to policies, practices, or procedures is structural and mandatory, not discretionary. 28 C.F.R. § 35.130(b)(7).

115. On October 20, 2026, Plaintiff Talley, a person with a documented disability (CVS), was denied: (a) access to a bathroom while in visible medical distress; (b) reasonable accommodation for her medical condition; and (c) all Title II ADA accommodation requests. Officers joked around while she was in distress. (Exhibit I)

116. The denial of reasonable accommodation to a person with a documented disability during an arrest and detention, where the person was in visible medical distress, constitutes a violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(7), actionable under 42 U.S.C. § 1983.

117. Plaintiff Talley's Title II ADA accommodation requests were previously denied by the Court of Common Pleas of Philadelphia County and the Pennsylvania Superior Court. The obligation to provide reasonable modifications under Title II is mandatory, not discretionary. The denial of accommodations to a litigant with a documented chronic medical condition, in proceedings where

property and liberty are at stake, is a per se violation of Title II. The issue is still being litigated in 2026, thirty-four years after the ADA was enacted.

COUNT VI DUE PROCESS — FORGERY OF RELEASE FORM AND FILING OF FALSE REPORT (U.S. Const. amend. XIV, § 1; 18 Pa.C.S. § 4101; 18 Pa.C.S. § 4906; 42 U.S.C. § 1983)

118. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 91 as if fully set forth herein.

119. Upon release from custody on October 20, 2026, Plaintiff Talley was handed release paperwork bearing a forged signature in her name. Plaintiff Talley did not sign the release form. The forgery constitutes a felony of the third degree under 18 Pa.C.S. § 4101(c).

120. A police officer filed a false report characterizing Plaintiff Talley's medical distress as misconduct. Another officer filed a false report in violation of 18 Pa.C.S. § 4906. The filing of false reports constitutes a deprivation of due process under the Fourteenth Amendment, actionable under 42 U.S.C. § 1983.

121. The forged release form and false reports were used to conceal the circumstances of the unlawful detention and to create a record that the detention was lawful. This constitutes tampering with public records under 18 Pa.C.S. § 4904.

COUNT VII WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(a), (k)(1), (k)(2); 42 U.S.C. § 1983)

122. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 91 as if fully set forth herein.

123. The automatic stay under 11 U.S.C. § 362(a) was in effect on October 20, 2026. It has been in effect since August 21, 2026, the date of the Chapter 7 bankruptcy filings. No court lifted the stay. No exception was invoked.

124. On October 20, 2026, Defendants Michael and Marsha Mullan, through their counsel Defendant Law & Associates, LLC, directed the execution of a writ of possession against the property, in direct violation of the automatic stay.

125. The violation was willful. The Mullans filed a thirty-five (35) page response to the Motion for Declaration of Automatic Stay Violation on September 14, 2026. They knew the stay was in effect. They litigated the stay issue. And on October 20, 2026 — thirty-six (36) days after their own thirty-five-page response — the Defendant's unlawfully executed the writ of possession. The "writ of possession" is an official State of Pennsylvania court document that was used by Co-Defendants to commit a federal crime. Police refused to provide a copy of the writ at the time of execution.

126. The violation of the automatic stay is "willful" where the acts were intentional and the actor(s) knew the stay was in effect and are aware of a substantial risk that the act violates the stay. Here, the Mullans did not merely face a "substantial risk." They affirmatively litigated the stay issue in the bankruptcy court and then proceeded to execute the writ. This is willfulness in its strongest form. As per 11 U.S.C. § 362(k)(1) "a person injured by any willful violation of a stay provided by this section shall recover... actual damages." The "willful" standard (intentional act + knowledge) is confirmed by the IRS Litigation Guidelines (1997) and is the majority rule. For the willfulness standard, see also In re Peterson, 522 F.3d 149 (3d Cir. 2008), where the Third Circuit governs all 63 cases related to this legal controversy. (Exhibit J)

127. Under 11 U.S.C. § 362(k)(1), Plaintiffs are entitled to recover actual damages, including costs and attorneys' fees. Under 11 U.S.C. § 362(k)(2), the Court may award punitive damages.

128. The execution of the writ is void. In re Cavanaugh, 819 F.2d 1438, 1440 (10th Cir. 1987). The Plaintiffs were never lawfully evicted. They remain tenants in possession and the property must be returned after the illegal lockout on October 20, 2026.

129. The Supremacy Clause, U.S. Const. art. VI, cl. 2, renders the state court's action a nullity where it conflicts with the federal stay. The state court's action is void. It is a nullity. It has no legal effect.

130. Plaintiffs note that the primary forum for § 362(k) damages is the Bankruptcy Court (In re Talley, No. CN 26-13521; In re Costello, No. CN 26-13520). This Count is included for completeness and to preserve the claim in this Court should the Bankruptcy Court decline jurisdiction or should the claims be consolidated.

COUNT VIII CONSPIRACY TO DEPRIVE OF CONSTITUTIONAL RIGHTS (42 U.S.C. § 1983; Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982))

131. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 91 as if fully set forth herein.

132. Under Adickes v. S.H. Kress & Co., 398 U.S. 144, 168–69 (1970), a private party who joins with state actors to deprive a person of constitutional rights is liable under § 1983. Under Lugar v. Edmondson Oil Co., 457 U.S. 922, 939 (1982), a private party becomes a state actor where it "jointly participates" with state officials in the deprivation of constitutional rights.

133. Defendants Michael Mullan, Marsha Mullan, Law & Associates, LLC, and Joseph P. Riley and Sons Moving Company Inc. jointly participated with state actors (the Philadelphia Police Department, the Philadelphia Sheriff's Office, and the Court of Common Pleas of Philadelphia County) in the deprivation of Plaintiffs' constitutional rights. Specifically:

(a) Defendants Mullan, through their counsel Defendant Law & Associates, LLC, directed the execution of the writ in the face of the federal stay, and the Philadelphia Sheriff's Office and Police Department carried out the execution using falsified documents that were not signed by a judge.

(b) Defendants Mullan, through their counsel Defendant Law & Associates, LLC, directed Defendant Riley Moving to remove Plaintiffs' personal property, including trial evidence, and to condition the return of that property on payment of storage fees.

(c) Defendant Law & Associates, LLC, through its owner Tsiwen Law, withdrew $2,200 in cash, arranged for paid courier delivery of an envelope to a code enforcement officer, and the L&I records were subsequently altered to show a license covering the 12-year period of non-compliance.

134. The conspiracy is evidenced by: (a) the coordinated action of two landlords, their law firm, a moving company, and state actors; (b) the fabricated court paperwork; (c) the denial of the right to inspect the writ at the time of execution; (d) the coordinated timing following the filing of judicial complaints; (e) the conduct of the officers at the scene (threats, laughter during medical distress, escort to employee exit); (f) the forged release form; (g) the false police reports; (h) the removal of trial evidence by a moving company; (i) the email from Marsha Mullan directing Plaintiffs to "contact the bankruptcy court" and "not try to contact the movers again" See Exhibit L Email from Marsha Mullan to Kurt Costello and Kristina Talley, dated October 22, 2026 (re: Belongings in

storage); and (j) the $2,200 cash withdrawal by the owner of Law & Associates, LLC, the paid courier delivery, and the acceptance of the envelope by the code enforcement officer.

135. The totality of the circumstances gives rise to a reasonable inference of improper influence over public officials, supporting a claim under 18 Pa.C.S. § 4701 (bribery in official and political matters).

136. Because the conspiracy is anchored on the joint participation of the private-party Defendants with state actors, the private-party Defendants are liable under § 1983. Adickes, 398 U.S. at 168–69. The State of Pennsylvania is liable under Ex parte Young for the ongoing enforcement of the void writ and the failure of its supervisory authority to prevent that enforcement.

COUNT IX SUPREMACY CLAUSE — STATE ACTION IN CONFLICT WITH FEDERAL LAW; EX PARTE YOUNG (U.S. Const. art. VI, cl. 2; 11 U.S.C. § 362(a); Ex parte Young, 209 U.S. 123 (1908))

137. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 91 as if fully set forth herein.

138. The Supremacy Clause provides that the Constitution, federal statutes, and treaties "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

139. The automatic stay under 11 U.S.C. § 362(a) is a federal statute enacted pursuant to the Bankruptcy Clause. It is the supreme law of the land. The state court's writ of possession, executed on October 20, 2026, in the face of the unlifted federal stay, is in direct conflict with the supreme law of the land.

140. The state court has no authority to act in contravention of the federal stay. The writ is void. The execution is a nullity. The state court's action has no legal effect.

141. Pursuant to Ex parte Young, 209 U.S. 123 (1908), Plaintiffs seek declaratory and injunctive relief against the State of Pennsylvania to: (a) declare the writ void; (b) enjoin any further execution or enforcement of the writ; and (c) order the immediate return of the property to Plaintiffs.

142. The State of Pennsylvania, through its court system, is enforcing a void writ of possession in the face of a federal automatic stay. The Pennsylvania Supreme Court, vested with "general supervisory and administrative authority over all the courts" (PA Constitution, Art. V, § 10), had actual notice of: (a) the pending bankruptcy and automatic stay; (b) the pending appeal with retained jurisdiction; (c) the JCB complaints; (d) the Superior Court's finding that the trial court's Rule 1925(b) order was defective; and (e) the pending petition (No. 87 EM 2026). Despite this notice, the State's court system executed the writ on October 20, 2026. The State's failure to exercise its supervisory authority to prevent the enforcement of a void writ constitutes ongoing unconstitutional conduct by a state officer within the meaning of Ex parte Young.

COUNT X DAMAGES FOR SEIZURE OF PROPERTY AND DESTRUCTION OF EVIDENCE (U.S. Const. amend. IV; 18 U.S.C. § 1512(c); 18 U.S.C. § 1519; 18 Pa.C.S. § 3921; 18 Pa.C.S. § 3923; 42 U.S.C. § 1983)

143. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 91 as if fully set forth herein.

144. During the unlawful eviction on October 20, 2026, Defendants Michael and Marsha Mullan directed, and Defendant Joseph P. Riley and Sons Moving Company Inc. carried out, the removal of all of Plaintiffs' personal belongings, including trial evidence for pending legal proceedings.

145. The removal of trial evidence constitutes obstruction of justice under 18 U.S.C. § 1512(c) and a violation of 18 U.S.C. § 1519, which criminalizes the knowing destruction or concealment of evidence with the intent to impede the proper administration of a case filed under Title 11.

146. The removal of Plaintiffs' personal property constitutes theft by unlawful taking under 18 Pa.C.S. § 3921, and the demand for storage fees as a condition of return constitutes theft by extortion under 18 Pa.C.S. § 3923.

147. On October 22, 2026, Defendant Marsha Mullan confirmed in writing that the landlords control the property and are refusing to return it, directing Plaintiff Costello instead to "contact the bankruptcy court and or your trustee." See Exhibit L Email from Marsha Mullan to Kurt Costello and Kristina Talley, dated October 22, 2026 (re: Belongings in storage). (Exhibit L) This is an affirmative act of withholding, not a passive storage arrangement.

148. Plaintiffs are entitled to compensatory damages for the value of the seized property, the cost of recovering the property, and the damages resulting from the destruction and concealment of trial evidence.

COUNT XI PRIVATE PARTY JOINT PARTICIPATION — LUGAR v. EDMONDSON OIL CO. (42 U.S.C. § 1983; Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982))

149. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 91 as if fully set forth herein.

150. Under Lugar v. Edmondson Oil Co., 457 U.S. 922, 939 (1982), a private party who "causes" or "jointly participates" in the deprivation of constitutional rights by state officials is subject to liability under § 1983.

151. Defendants Michael Mullan, Marsha Mullan, Law & Associates, LLC, and Joseph P. Riley and Sons Moving Company Inc. each caused or jointly participated in the following deprivations:

(a) The deprivation of Plaintiffs' property without due process (Count I) — by directing the execution of a void writ, by failing to produce the writ at the scene, and by affirmatively withholding Plaintiffs' personal property.

(b) The unreasonable seizure of Plaintiffs' personal property (Count II) — by directing the moving company to remove all belongings, including trial evidence.

(c) The willful violation of the automatic stay (Count VII) — by affirmatively litigating the stay issue in the bankruptcy court and then unlawfully executing the writ 36 days later, despite proper notice of the automatic stay.

(d) The deprivation of Plaintiffs' right to be heard in pending proceedings (Count X) — by removing trial evidence and conditioning its return on payment.

152. Each of these deprivations was carried out by state actors (the Philadelphia Police Department, the Philadelphia Sheriff's Office) acting at the direction of the private-party Defendants. The private-party Defendants are therefore liable under § 1983 as joint participants in the state action.

COUNT XII BRIBERY AND IMPROPER INFLUENCE OVER PUBLIC OFFICIALS (18 Pa.C.S. § 4701; 42 U.S.C. § 1983)

153. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 91 as if fully set forth herein.

154. The totality of the circumstances surrounding the conduct of the DLI Code Enforcement Officer gives rise to a reasonable inference of bribery or improper influence in violation of 18 Pa.C.S. § 4701:

(a) On June 10, 2025, the Code Enforcement Officer conducted an inspection and cited 12 violations.

(b) On June 17–21, 2025, Tsiwen Law, the owner of Defendant Law & Associates, LLC, withdrew $2,200 in cash.

(c) On June 22, 2025, an envelope was delivered by paid courier.

(d) On June 23, 2025, the Code Enforcement Officer accepted the envelope.

(e) In July 2025, the Code Enforcement Officer refused to return for the follow-up inspection.

(f) Post-June 2025, the L&I records were altered to show a license covering the 12-year period of non-compliance, see information about unlawfully backdating the Mullan's rental license.

(g) At trial (June 1–2, 2026), Landlord Michael Mullan testified that the rental license was backdated 12 years.

155. The sequence of events — the cash withdrawal by the owner of Defendant Law & Associates, LLC, the paid courier, the acceptance, the refusal to return, and the subsequent alteration of records — is not consistent with the neutral application of the code. It is consistent with a *quid pro quo*: the envelope was given in exchange for the failure to enforce the code and the alteration of the records.

156. The 100% eviction success rate of Defendant Law & Associates, LLC across approximately 50 cases over ten years, combined with the documented conduct alleged herein, supports the inference

that the outcomes were achieved through improper influence over judicial officers and public officials rather than through proper legal representation.

157. The deprivation of Plaintiffs' right to a neutral adjudicator and a fair adjudication, caused by the improper influence over the Code Enforcement Officer, is actionable under 42 U.S.C. § 1983.

COUNT XIII DUE PROCESS — DEFECTIVE SERVICE AND USE OF UNSIGNED ORDER IN FEDERAL COURT (U.S. Const. amend. XIV, § 1; Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950); 42 U.S.C. § 1983)

158. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 91 as if fully set forth herein.

159. On September 22, 2026, the Superior Court issued an order that: (a) is unsigned by any judge; (b) was served electronically to only one of the two Appellants; and (c) was not known to the non-notified Appellant until October 14, 2026, when it was used against them in the federal bankruptcy proceeding.

160. Defendants Mullan, through their counsel, used the September 22, 2026 docket entry in the federal bankruptcy proceeding to support their position regarding the automatic stay. The use of a defective, unsigned order — electronically served to only one of two Appellants, of which the non-notified Appellant had no knowledge until it was used against them in federal court — constitutes a compound due process violation. The Appellants were deprived of the opportunity to respond to the order before it was used as the basis for a federal court ruling. This is a denial of the right to be heard, which is the core of due process. Mullane, 339 U.S. at 313–14.

161. The constitutional right to due process is not a factor to be balanced. It is the threshold. The use of an order that was never properly entered, never properly served, and never signed, as the

basis for a federal court ruling against Plaintiffs, is a deprivation of liberty and property without due process of law.

SUPPORTING DOCUMENTS

The following documents are crucial:

1. Trial Transcript, Part 1 (187 pages), see Trial Tr., Vol. 1, *Mullan v. Talley*, No. 250102631 (Ct. C.P. Phila.).

2. Trial Transcript, Part 2 (152 pages), see Trial Tr., Vol. 2, *Mullan v. Talley*, No. 250102631 (Ct. C.P. Phila.).

3. Original Petition for Writ of Prohibition, Pet. for Writ of Prohib., *Talley v. Court of Common Pleas of Philadelphia*, No. 87 EM 2026 (Pa. Sept. 29, 2026).

4. Emergency Application for Leave to File Original Process, App. for Leave to File Original Process, *Talley v. Court of Common Pleas of Philadelphia*, No. 87 EM 2026 (Pa. Sept. 29, 2026).

5. Motion for Leave to Proceed *in Forma Pauperis*, App. to Proceed *In Forma Pauperis*, *Talley v. Court of Common Pleas of Philadelphia*, No. 87 EM 2026 (Pa. Sept. 29, 2026).

6. Certificate of Service, Cert. of Service, *Talley v. Court of Common Pleas of Philadelphia*, No. 87 EM 2026 (Pa. Oct. 8, 2026).

7. JCB Complaint against Judge Glynnis D. Hill, Compl., Pa. Jud. Conduct Bd., (filed Sept. 11, 2026)

8. JCB Complaint against Judge Joshua Roberts, Compl., Pa. Jud. Conduct Bd., (filed Sept. 11, 2026)

9. JCB Complaint against Judge Christopher Hall, Compl., Pa. Jud. Conduct Bd., (filed Sept. 11, 2026)

10. Rule 1925(a) Opinion, issued July 16, 2026, Op., *Mullan v. Talley*, No. OPFLD_285.PDF (Ct. C.P. Phila. July 16, 2026) (Hill, J.).

11. [Pa. Superior Ct.] ORDER granting SPEAKING APPLICATION FOR RELIEF, No. 1604-EDA-2026, Docket Entry No. APGEN_327 (Mullan et al. v. Talley, et al.) (Aug. 13, 2026)

12. SPEAKING APPLICATION FOR RELIEF, No. 1604-EDA-2026 (*Mullan et al. v. Talley, et al.*) (filed July 29, 2026)

13. Trial Court Order of August 26, 2026 releasing $30,600 escrow funds, [Phila. C.P.] ORDER releasing $30,600 in escrow funds, No. 55-26053955 (*Mullan et al. v. Talley, et al.*) (Aug. 26, 2026) (Roberts, J.)

14. Trial Court Order of August 27, 2026 releasing $28,800 escrow funds, [Phila. C.P.] ORDER (corrected) releasing $28,800 in escrow funds, No. 55-26053955 (*Mullan et al. v. Talley, et al.*) (Aug. 27, 2026) (Roberts, J.)

15. BANKRUPTCY PETITIONS, In re Kurt R. Costello, No. 26-13520; In re Kristina Karen Talley, No. 26-13521 (filed Aug. 21, 2026)

16. MOTION of Debtor for Declaration of Automatic Stay Violation, In re Kurt R. Costello, No. 26-13520 (filed Aug. 31, 2026); In re Kristina Karen Talley, No. 26-13521 (filed Aug. 30, 2026)

17. [Phila. C.P.] ORDER denying Emergency Motion for Stay of Eviction, No. 85-26087385 (Mullan et al. v. Talley, et al.) (Aug. 20, 2026) (Hall, J.)

18. [Phila. C.P.] ORDER denying Motion for Reconsideration, No. 89-26085089 (Mullan et al. v. Talley, et al.) (Aug. 24, 2026) (Hall, J.)

19. [Phila. C.P.] ORDER (corrected) (Mullan et al. v. Talley, et al.) (Feb. 11, 2026)

20. Screenshot of public URL documentation, "Mike Brown Accepted a Bribe," Exhibit K, Docket Entry No. APGEN_327, Mullan et al. v. Talley, et al. (Aug. 17, 2026, 4:33 PM)

21. Medical Documentation of Cyclic Vomiting Syndrome, "Disability Diagnosis," Exhibit P, Docket Entry No. APGEN_327, Mullan et al. v. Talley, et al. (Aug. 17, 2026, 4:33 PM)

22. Philadelphia Department of Public Health Inspection Report (Mar. 2026), "Philadelphia Public Health Department Lead Paint Test," Exhibit N, Docket Entry No. APGEN_327, Mullan et al. v. Talley, et al. (Aug. 17, 2026, 4:33 PM)

23. Bay Hill Environmental Lead Paint Inspection Report (Jan. 2025), "108 Lead Paint Violations," Exhibit I, Docket Entry No. APGEN_327, Mullan et al. v. Talley, et al. (Aug. 17, 2026, 4:33 PM)

24. Fair Housing Commission Final Order, Docket No. 20223-11-02-16083 (May 7, 2024), "Fair Housing Commission Final Order," Exhibit H, Docket Entry No. APGEN_327, Mullan et al. v. Talley, et al. (Aug. 17, 2026, 4:33 PM)

25. ODC DISMISSAL LETTER, Office of Disciplinary Counsel, Tsiwen Law Complaint, File No. C1-26-789 (Sept. 24, 2026)

26. Marios Papamichalis & Regina Ruane, How Eviction Court Governs: A Statistical Analysis of Bargaining, Templates, and Debt in Philadelphia (May 24, 2026) (unpublished manuscript), arXiv:2605.24849 [stat.AP], https://doi.org/10.48550/arXiv.2605.24849

27. Superior Court Order denying Emergency Motion for Reconsideration, No. 1604-EDA-2026 (September 22, 2026) — unsigned, served to one appellant-tenant only

28. [E.D. Pa.] ORDER denying TRO, In re Kristina Karen Talley, No. 26-13521 (Oct. 14, 2026); TRO pending in In re Kurt R. Costello, No. 26-13520

29. [Pa. Superior Ct.] DOCKET ENTRY confirming 60-day supplemental opinion deadline, No. 1604-EDA-2026 (Mullan et al. v. Talley, et al.) (Aug. 13, 2026), Docket Entry No. APGEN_327 (Aug. 17, 2026, 4:33 PM)

30. MOTION for Reconsideration raising website access issue, [Phila. C.P.], No. 07-26062607 (Mullan et al. v. Talley, et al.) (filed June 10, 2026)

31. [Bankr. E.D. Pa.] ORDER denying MOTION of Debtor for Declaration of Automatic Stay Violation, Turnover of Estate Property, Injunctive Relief, and Sanctions, In re Kristina Karen Talley, No. 26-13521 (ECF No. 19) (Sept. 23, 2026)

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Kristina Karen Talley, *pro se*, and Kurt R. Costello, *pro se*, respectfully request that this Court:

(a) Declare that the writ of possession executed on October 20, 2026, is void and of no legal effect;

(b) Declare that the automatic stay under 11 U.S.C. § 362(a) remains in effect;

(c) Declare that Plaintiffs remain the lawful tenants in possession of the property at 2353 East Cumberland Street, Philadelphia, Pennsylvania 19125;

(d) Enjoin Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with them, from executing or attempting to execute any writ of possession against the property at 2353 East Cumberland Street while the automatic stay is in effect;

(e) Enjoin Defendants from seizing, removing, or interfering with Plaintiffs' personal property;

(f) Order Defendant Joseph P. Riley and Sons Moving Company Inc., to return all of Plaintiffs' personal property, including all trial evidence for pending legal proceedings, to Plaintiffs immediately and without payment of any fee or charge;

(g) Order Defendants Michael Mullan and Marsha Mullan to return all of Plaintiffs' personal property, including all trial evidence for pending legal proceedings to permit Plaintiffs to re-enter and take possession of the property at 2353 East Cumberland Street, Philadelphia, Pennsylvania 19125;

(h) Award Plaintiffs compensatory damages for the deprivation of their constitutional rights, including the value of seized property, emotional distress, medical costs, and loss of use of the property;

(i) Award Plaintiffs actual damages, including costs and fees, for the willful violation of the automatic stay pursuant to 11 U.S.C. § 362(k)(1);

(j) Award Plaintiffs punitive damages pursuant to 11 U.S.C. § 362(k)(2) and 42 U.S.C. § 1983;

(k) Award Plaintiffs nominal damages for the violation of their constitutional rights;

(l) Award Plaintiffs reasonable fees and costs pursuant to 42 U.S.C. § 1988;

(m) Declare that the September 22, 2026 Superior Court order is void as to the non-notified Appellant;

(n) Enjoin any further execution or enforcement of the Writ of Possession in Case No. 250102631;

(o) Retain jurisdiction to enforce the orders entered herein and to grant such further relief as may be necessary; and

(p) Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: ____________________
Kristina Karen Talley, *pro se*
2353 East Cumberland St
Philadelphia, PA 19125
Phone: (215) 694-0834

By: ____________________
Kurt R. Costello
2353 East Cumberland St
Philadelphia, PA 19125
(302) 650-3153

DEMAND FOR JURY TRIAL

Plaintiffs respectfully request that the issues in this matter be heard by a jury as per D. Del. LR 38.1, where the Notation of "Jury Demand" is captioned in this pleading. The Plaintiffs demand a jury trial by endorsing it within this pleading. As permitted by Fed. R. Civ. P. 38(b), a notation shall be placed in the caption of the pleading stating "Demand For Jury Trial" or the equivalent. This notation will serve as a sufficient demand under Fed. R. Civ. P. 38(b).

By: ____________________
Kristina Karen Talley, *pro se*
2353 East Cumberland St
Philadelphia, PA 19125
Phone: (215) 694-0834

By: ____________________
Kurt R. Costello
2353 East Cumberland St
Philadelphia, PA 19125
(302) 650-3153

DESIGNATION OF TRIAL

Plaintiffs designate Philadelphia, Pennsylvania as the location for the trial in this matter.

By: ____________________
Kristina Karen Talley, *pro se*
2353 East Cumberland St
Philadelphia, PA 19125
Phone: (215) 694-0834

By: ____________________
Kurt R. Costello
2353 East Cumberland St
Philadelphia, PA 19125
(302) 650-3153

L. Civ. R. 5.1(b)

Fed. R. Civ. P. 11; E.D. Pa. Pro Se Notice

IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA

KRISTINA KAREN TALLEY and )
KURT R. COSTELLO, )
Plaintiffs, v. )
STATE OF PENNSYLVANIA, )
LAW & ASSOCIATES, LLC, )
MICHAEL MULLAN, ) C.A. No.
MARSHA MULLAN, and )
JOSEPH P. RILEY AND SONS )
MOVING COMPANY INC., )
Defendants. )
)
Clerk of Court )
U.S. District Court Eastern District of )
Pennsylvania, James A. Byrne U.S. Courthouse )
Room 2609 )
601 Market Street )
Philadelphia, PA 19106-1797

CERTIFICATE OF WORD COUNT

The complaint does not exceed 24,000 words (the E.D. Pa. default limit under Local Rule 5.1(b), Pursuant to Fed. R. Civ. P. 11 and E.D. Pa. Local Rule 5.1(b), the undersigned certifies that the accompanying Complaint contains approximately 16,283 words, excluding the portions of the, document exempted by Local Rule 5.1(b) (caption, table of contents, table of authorities, exhibits, and certificate of service).

This certificate was prepared using Microsoft Word's word count function on October 23, 2026.

Respectfully submitted,

By: Kristina Karen Talley

Kristina Karen Talley, *pro se*
2353 East Cumberland St
Philadelphia, PA 19125
Phone: (215)-694-0834
krissytalley@gmail.com

Dated: October 23, 2026

IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA

KRISTINA KAREN TALLEY and
KURT R. COSTELLO,
Plaintiffs, v.
STATE OF PENNSYLVANIA,
LAW & ASSOCIATES, LLC,
MICHAEL MULLAN,
MARSHA MULLAN, and
JOSEPH P. RILEY AND SONS
MOVING COMPANY INC.,
Defendants.

) C.A. No.

Clerk of Court
U.S. District Court Eastern District of
Pennsylvania, James A. Byrne U.S. Courthouse
Room 2609
601 Market Street
Philadelphia, PA 19106-1797

PROOF OF SERVICE

I, Kristina K. Talley, *pro se*, and I, Kurt R. Costello, *pro se*, verify that the statements made herein are true and correct, and that false statements herein are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities; and do swear or declare that on this date October 23, 2026, caused copies of: (1) Demand for Jury Trial; Complaint for Violation of Constitutional and Statutory Rights Pursuant to 42 U.S.C. § 1983; Ex Parte Young Declaratory and Injunctive Relief; and Supremacy Clause, and (2) Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* Pursuant to 28 U.S.C. § 1915(a)(1); (3) Plaintiffs' Emergency Motion for Injunctive Relief Pursuant to Fed. R. Civ. P. 65(a) and 28 U.S.C. § 1343; (4) Plaintiffs' Emergency Motion for Temporary Restraining Order Pursuant to Fed. R. Civ. P. 65(b); and (5) this Proof of Service, to be served on each party to the above proceeding or that party's counsel, and on every other person required to be served. Summonses were filed with the United States District Court Eastern District Of Pennsylvania pursuant to Fed. R. Civ. P. 5(b)(2)(E) which states that this complaint and other filings, shall be served promptly upon every party by leaving or mailing a copy at/to the address endorsed on the last filing of a party or the party's attorney of record, by leaving or mailing a copy

at/to the party's residence, place of business or place of last service of the complaint or other filing, by depositing an envelope containing the above documents in the United States mail properly addressed with first-class postage prepaid. PA AG (David W. Sunday, Civil Litigation Section) and Secretary of the Commonwealth (Al Schmidt) are served as required for actions against the Commonwealth under 42 Pa.C.S. § 8522(b).Plaintiff declares under penalty of perjury that the foregoing is true and correct. The names and addresses of those served are as follows:

Executed on October 23, 2026

This proof of service, in the form of a declaration pursuant to 28 U. S. C. § 1746, is served on the following defendants via the address provided.

Office of Attorney General
Pennsylvania Attorney General
c/o David W. Sunday
Civil Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA 17120

Secretary of the Commonwealth
c/o Al Schmidt
Room 302, North Office Building
401 North Street
Harrisburg, PA 17120

Law & Associates, LLC.
c/o Tsiwen M. Law
121 S. Broad Street
18th Floor
Philadelphia, PA 19107

Michael Mullan and Marsha Mullan
2147 E Cumberland Street
Philadelphia, PA 19125

Joseph P. Riley and Sons Moving Company Inc.
c/o Kevin Riley and Tom Riley, Owners / Officers
9800 Ashton Road
Philadelphia, PA 19114

IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA

By: Kristina Karen Talley
Kristina Karen Talley, *pro se*
2353 E Cumberland Street
Philadelphia, PA 19125
Phone: (215)-694-0834

By: Kurt Costello
Kurt R. Costello, *pro se*
2353 E Cumberland Street
Philadelphia, PA 19125
Phone: (302)-650-3153